UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

  v.

MARCELLO MAYS,

        Defendant.

Case No. 17-cr-96-pp

---

**ORDER DENYING DEFENDANT'S LETTER MOTION FOR CONSIDERATION UNDER U.S.C. 4205(g) OR 3582C(1)(A) (DKT. NO. 437)**

---

On February 12, 2019, the defendant pled guilty to an information charging him with one count of conspiring to possess with intent to distribute and to distribute heroin between 2014 and June 6, 2017. Dkt. No. 295. On January 16, 2020, the court sentence the defendant to serve 100 months in custody. Dkt. Nos. 425, 426.

Not quite six months later, on June 29, 2020, the court received this *pro se* letter motion from the defendant. Dkt. No. 437. The defendant asks the court "for consideration under U.S.C. 4205(G) or 3582c(1)(A)." Id. He says that the circumstances at FMC Lexington, and in the entire Bureau of Prisons, are extraordinary and compelling due to the progressing number of cases and deaths related to the coronavirus. Id. The defendant says that the numbers will only grow because of the confined living space. He says that his family does not want to see him get sick or die in prison. Id. The defendant indicates that he has high blood pressure and that he has a family history of heart disease and liver failure. Id. The defendant indicates that if released, he will live at 5664

1

North 96th Street; he says his mother and his girlfriend Rochelle Reed have agreed to help him with employment. Id.

The court asked Federal Defender Services to review the motion to determine whether it might file something on the defendant's behalf. Dkt. No. 438. Federal Defender Services responded that due to the demands on its time, it could not file anything for the defendant, but emphasized that it was not taking a position on whether the court should grant the defendant's motion. Dkt. No. 439.

The court also asked probation and the government to weigh in on the defendant's motion. Dkt. no. 440.

The probation office reports that the defendant is designated to the Federal Medical Center in Lexington, Kentucky. Dkt. No. 443 at 1. It indicates that according to the BOP web site, 232 inmates at FMC Lexington have recovered from the virus and eight currently are positive. Id. See also BOP COVID-19 page showing eight confirmed active cases at Lexington, https://www.bop.gov/coronavirus (last visited July 17, 2020). The defendant applied for compassionate release from the warden of Lexington on May 19, 2020; as of July 8, when probation prepared the memo, the warden had not responded. Id. BOP medical records show that the defendant is being treated for high blood pressure (for which he takes medication) and a scalp condition. Id. at 2. The defendant has had no disciplinary violations and has completed four programs. Id. He is eligible for pre-release home confinement on June 8, 2026 and for release on December 8, 2026. Id. See also BOP Inmate Locator showing a release date of December 8, 20206, https://www.bop.gov/inmateloc/ (last visited July 17, 2020).

The government begins by recounting that the defendant was convicted of participation in a years-long conspiracy, that this was his fourth drug trafficking conviction, that he qualified as a career offender and that he received a below-guidelines sentence. Dkt. No. 445 at 2. The government points out that the defendant has over six years left to serve. Id. The government indicates that because more than thirty days have passed since the defendant asked the warden for compassionate release, and the warden has not responded, it appears that the defendant has exhausted his remedies as required by 18 U.S.C. §3582(c)(1)(A). Id. at 8. The government argues, however, that the defendant has not demonstrated any "extraordinary and compelling" reasons why the court should grant his motion for release. Id. at 12. It argues that while the defendant claims to suffer from high blood pressure, he has provided no proof. Id. The government also asserts that high blood pressure is not the kind of chronic medical conditions that makes one more vulnerable to severe illness if infected with COVID-19. Id. at 13.

The government also argues that the defendant is a danger to the community. Id. at 14. The government points out that the defendant had two loaded firearms in connection with the heroin offense, found during a search of his drug house in July 2014. Id. The defendant trafficked large amounts of heroin in Milwaukee for years, the government argues, did so while armed, and was reported to be involved in an exchange of fire in 2016 and in possession of an assault rifle in 2017. Id.

The defendant mentioned 4205(g). The court assumes that he is referring to 18 U.S.C. §4205(g), which allowed a sentencing court to make an inmate with a minimum term sentence immediately eligible for parole by reducing the minimum term to time served, if asked by the Bureau of Prisons. Section

4205(g) was repealed November 1, 1987, when Congress did away with parole and the Sentencing Guidelines went into effect. Section 4205(g) applies only to these defendants whose offenses occurred prior to November 1, 1987. The defendant's offenses occurred between 2014 and 2017, so §4205(g) does not apply.

To the extent that the defendant is asking the court to reduce his sentence under the compassionate release provision of the First Step Act, 18 U.S.C. §3582(c)(1)(A), he has not demonstrated that he is entitled to that relief. Generally, a court may not modify a term of imprisonment once it has been imposed. 18 U.S.C. §3582(c). The compassionate release provision of the First Step Act makes an exception to that rule in certain narrow circumstances. It says:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(b);
>
> And that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; . . . .

4

The first part of the statute—section (c)(1)(A)—says that the Director of the Bureau of Prisons may make a motion to the court, asking for a compassionate release sentence reduction. The BOP has not done that here.

In the alternative, the statute says that the *defendant* may make a motion to the court after he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf." It appears that the defendant has asked the warden at Lexington for compassionate release, and that the warden did not respond within thirty days. The defendant appears to have exhausted his administrative remedies as required by the statute.

But the court cannot find that the defendant qualifies for release under the other provisions of the statute. Section 3852(c)(1)(A)(ii) doesn't apply to the defendant; he is not at least seventy years old (he is thirty-eight), has not served at least ten years of his sentence and the BOP has not determined that he is not a danger to the community. So the only basis for the court to grant his motion would be §3582(c)(1)(A)(i)—if there were "extraordinary and compelling reasons" that warranted a sentence reduction.

The application note to U.S.S.G. §1B1.13 defines "extraordinary and compelling" reasons:

(A) **Medical Condition of the Defendant.**—

    (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples included metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii) The defendant is—

5

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

That substantially diminishes the ability of the defendant to provide selfcare within the environment of a correctional facility and from which he or she is not expected to recover.

(B) **Age of the Defendant.**—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75% of his or her term of imprisonment, whichever is less.

(C) **Family Circumstances.**—

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) **Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

The defendant does not fall into category (A). He does not allege that he suffers from a terminal illness or from any severe illness or impairment that would diminish his ability to care for himself and from which he is not likely to recover. The defendant asserts that he has high blood pressure. In the bond study prepared in June 2017, the defendant reported to the pretrial services officers that he suffered from high blood pressure but was not taking any medication or receiving treatment for it. Dkt. No. 18 at 2. In the June 2019 presentence report, the defendant denied any ongoing medical problems and said he was not taking any prescribed medication. Dkt. No. 357 at ¶130. The

6

BOP reported to probation in connection with this motion, however, that the defendant is taking medication for hypertension. Dkt. No. 443 at 2. The court disagrees with the government, therefore, that the record contains no evidence to support the defendant's claim that he has high blood pressure.

But while the European Society of Cardiology reported a month or so ago that new research indicated that patients with untreated high blood pressure were at greater risk of dying from COVID-19 infection than those without high blood pressure, https://www.escardio.org/The-ESC/Press-Office/Press-releases/High-blood-pressure-linked-to-increased-risk-of-dying-from-COVID-19, the Centers for Disease Control and Prevention indicate that they do not "think that people with high blood pressure and no other underlying health conditions are more likely than others to get severely ill from COVID19," https://www.cdc.gov/coronavirus/2019-ncov/faq.html#COVID-19-and-Hypertension. The CDC indicates that while some people who have become severely ill from COVID-19 have high blood pressure, "they are often older or have other medical conditions like obesity, diabetes, and serious heart conditions that place them at higher risk of severe illness from COVID-19." Id.

The defendant also says that he has a family history of heart disease and liver failure. That may well be—the court doesn't know—but the *defendant* doesn't have heart disease or liver failure. He does not appear to have any medical issues which make him more likely to contract the virus, or more likely to become severely ill if he is infected. The defendant does not fall into category (B).

Nor does the defendant fall into category (C)—he has not alleged that anyone who cares for his children (he has four) has passed away or is

7

incapacitated, or that he is the only person who can care for an incapacitated spouse or registered partner (the defendant is not married).

So the court must analyze whether there are some other extraordinary or compelling circumstances in this defendant's particular case that warrant the compassionate release reduction. There are not.

The defendant is young and relatively healthy. He is in a facility that currently has only eight confirmed cases of COVID-19, compared to a facility like FCI Elkton, Ohio, which has hundreds of confirmed cases. He has high blood pressure, but no other underlying health conditions. His family is worried about him, but that is not an "extraordinary or compelling" circumstance—many inmates have worried family members these days. Since the advent of COVID-19, this court has received many compassionate release motions. Some have been from inmates who are in facilities with hundreds of confirmed cases of COVID-19. Some are from inmates who have seen fellow inmates die of the virus. Some are from inmates with asthma or mental health issues. At least one was from an inmate who had been infected with the virus. The court denied many of those motions, because the defendants did not demonstrate "extraordinary and compelling" circumstances. The defendant in this case is better off than many of those defendants.

The court does not mean to trivialize the defendant's concerns about COVID-19. The court knows that many incarcerated persons cannot practice social distancing, do not have masks, cannot wash their hands frequently, have no access to hand sanitizer. It is much harder for inmates to take the precautions that public health experts advise all of us to take to avoid the spread of this dangerous virus. The court understands why the defendant is afraid, and why his family is worried. If, however, fear of the virus was a basis

for granting a sentence reduction for compassionate release, there would no longer be inmates in any jails or prisons.

The court also must consider whether the defendant is a danger to the community. The government has recounted in detail the defendant's offense of conviction—conspiring with others over years to distribute large amounts of heroin in Milwaukee. The defendant had guns in a drug house at the time he was arrested, and cooperators indicated that he was armed at times when he sold drugs. One witness indicated that the defendant had fired back at some people who had shot at him. Despite being convicted three times previously on drug offenses, the defendant continued to sell heroin, which led to his arrest and conviction in this case. He has an extensive criminal history—the *low* end of his guideline range was 151 months, and the court sentenced him below that low end. The court cannot conclude that the defendant is not a danger to the community.

In sum, the defendant has not demonstrated the extraordinary and compelling circumstances that would justify the sentence reduction he requests.

The court notes one thing. The defendant has said that his family does not want him to die in prison. The pandemic is frightening for many reasons. But the statistics show that many people who become infected with COVID-19 do not have symptoms—they don't get sick. Many others become ill but recover. The CDC says that "[m]ost people with COVID-19 have mild illness and can recover at home without medical care." https://www.cdc.gov/coronavirus/2019-ncov/if-you-are-sick/steps-when-sick.html. One jail in the Milwaukee metropolitan area had seventy-nine inmates test positive for the virus, but no deaths were reported. The court does not say this to trivialize the

concerns of the defendant's family, only to note that the fact that a person tests positive for COVID-19 does not mean that person will die.

The court **DENIES** the defendant's letter motion for compassionate release. Dkt. No. 437.

Dated in Milwaukee, Wisconsin this 20th day of July, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**